UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRESH PACKING CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBERTO P. GUICHO, SR., et al.,<br><br>          Defendants. | Case No. 15-CV-01551-LHK<br><br>**ORDER AWARDING ATTORNEY'S FEES**<br><br>Re: Dkt. No. 37 |

On April 6, 2016, the Court granted Plaintiff Fresh Packing Corporation's ("Plaintiff")

motion for default judgment against Defendants Roberto P. Guicho, Sr. and Guicho's Produce,

Inc. ("Guicho's Produce") (collectively, "Defendants") for violations of the Perishable

Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 449a *et seq.*, and breach of contract.  ECF

No. 40.  Pursuant to Civil Local Rule 7-1(b), the Court vacated the hearing on Plaintiff's motion

for default judgment.  The Court awarded Plaintiff $24,142.38 in damages.  *Id.* at 19.  Although

the Court found that Plaintiff was entitled to reasonable attorney's fees and costs, the Court could

not determine the amount of the award until Plaintiff submitted billing records or a breakdown of

the hours expended by each attorney along with a description of those hours, as well as

justification for counsels' requested rates, "estimated" attorney's fees, and the requested costs.

United States District Court<br>Northern District of California

1  Plaintiff submitted supplemental information on April 8, 2016.  ECF Nos. 41, 42.  Having

2  reviewed Plaintiff's submissions, the relevant law, and the record in this case, the Court hereby

3  AWARDS Plaintiff $21,167.56 in attorney's fees and $1,734.25 in costs.

4  **I.      BACKGROUND**

5         On April 3, 2015, Plaintiff filed the instant action against Guicho's Produce and "Roberto

6  P. Guicho" alleging that Defendants failed to pay for produce delivered by Plaintiff.  ECF No. 1.

7  Although Guicho's Produce and Roberto P. Guicho were served on June 12, 2015, *see* ECF Nos.

8  7, 8, neither defendant appeared or answered the complaint.  However, an individual named

9  Roberto P. Guicho, Jr. filed a notice of stay of proceedings on July 22, 2015 due to his pending

10  bankruptcy proceedings.  ECF No. 12.  In response to the notice, Plaintiff represented that this

11  lawsuit is against Roberto P. Guicho, Sr., not Roberto P. Guicho, Jr., and that Roberto P. Guicho,

12  Sr. was the individual served.  ECF No. 14–15.  On July 29, 2015, the Court declined to stay the

13  proceedings based on Plaintiff's representation that this lawsuit is against Roberto P. Guicho, Sr.

14  and thus unrelated to Roberto P. Guicho, Jr.'s bankruptcy proceedings.  ECF No. 17.  Meanwhile,

15  on July 28, 2015, the Clerk entered default as to Roberto P. Guicho and Guicho's Produce.  ECF

16  No. 16.

17         On November 2, 2015, Plaintiff filed an unopposed motion to amend the case caption to

18  clarify that Roberto P. Guicho, Sr., and not Roberto P. Guicho, Jr., is a defendant.  ECF No. 21.

19  Plaintiff's twenty-two line motion failed to cite the legal standard for amending a complaint or any

20  relevant case law.  *See id.*  In the interest of judicial efficiency, however, the Court independently

21  analyzed whether amendment was appropriate and granted Plaintiff leave to amend the caption on

22  December 3, 2015.  ECF No. 26.  Accordingly, on December 8, 2015, Plaintiff filed the FAC

23  naming Roberto P. Guicho, Sr. and Guicho's Produce as defendants.  ECF No. 27.  No other

24  changes were made to the factual allegations or asserted claims.  The FAC asserted three

25  violations of PACA and a cause of action for breach of contract.  *Id.* ¶¶ 14–37.

26         On January 5, 2016, the Court granted Plaintiff's ten line, unopposed motion to set aside

27  the entry of default as to Roberto P. Guicho, so that default could be entered against the correctly

United States District Court
Northern District of California

1    named defendant, Roberto P. Guicho, Sr.  ECF No. 31.  However, the Court denied Plaintiff's

2    motion to set aside the entry of default against Guicho's Produce as there was no confusion over

3    the identity of Guicho's Produce, the FAC did not alter any allegations related to Guicho's

4    Produce, and Plaintiff provided no reason to set aside the default of Guicho's Produce.  *Id.*

5         On February 10, 2016, the Clerk entered default against Roberto P. Guicho, Sr.  ECF No.

6    36.  On February 24, 2016, Plaintiff moved for default judgment against Roberto P. Guicho, Sr.

7    and Guicho's Produce.  ECF No. 37.  Plaintiff's twenty-two line motion for default judgment cited

8    no legal authority and did not address any of the requirements for default judgment, including

9    personal jurisdiction, subject matter jurisdiction, or the *Eitel* factors.  Plaintiff requested damages

10   for the invoice value of the unpaid produce, prejudgment interest, and attorney's fees and costs.  In

11   support of Plaintiff's request for attorney's fees and costs, Plaintiff submitted a three page

12   affidavit from Plaintiff's counsel with no billing records.  ECF No. 37-1.

13        On April 4, 2016, the Court ordered supplemental briefing as to Plaintiff's request for

14   attorney's fees and costs.  ECF No. 39.  The Court noted that the affidavit submitted by Plaintiff's

15   attorney "does not provide any billing records, or any breakdown of how many hours were

16   expended by each attorney or how the hours were expended."  *Id.* at 2.  The Court also noted that

17   Plaintiff failed to (1) identify any of Plaintiffs' requested costs, (2) explain a $4,122.50 "estimate

18   for attorneys' fees and costs through issuance of the requested default judgment," or (3) provide

19   any evidence justifying counsels' requested hourly rates.  *Id.*  The Court reminded Plaintiff that

20   the party seeking attorney's fees bears the burden of demonstrating reasonable hours and rates.  *Id.*

21        On April 6, 2016, the Court granted Plaintiff's motion for default judgment and awarded

22   Plaintiff $19,019 for the value of the unpaid produce delivered to Defendants.  ECF No. 40 at 16.

23   The Court also found that Plaintiff was entitled to recover prejudgment interest as well as

24   attorney's fees and costs based on the contracts between Plaintiff and Defendants.  *Id.* at 17

25   (noting contracts provided that "Buyer agrees to pay reasonable collection cost, reasonable

26   attorney fees and actual court cost if such be incurred in the collection of this account").  The

27   Court awarded Plaintiff $5,123.38 in prejudgment interest.  However, the Court reserved

28

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

1  determination of the amount of attorney's fees and costs until after Plaintiff filed the requested

2  supplemental briefing. *Id.* at 19. Plaintiff's counsel submitted updated declarations and billing

3  records on April 8, 2016. ECF Nos. 41 (Decl. of Eric T. Hartnett, or "Hartnett Decl."); 42 (Decl.

4  of Michael J. Keaton, or "Keaton Decl.").

5  ## II.   LEGAL STANDARD

6      To determine the amount of attorney's fees to award, courts within the Ninth Circuit have

7  employed the lodestar method, whereby a court multiplies "the number of hours the prevailing

8  party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport*

9  *Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "Although in most cases, the lodestar figure is

10  presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the

11  lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit*

12  *Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001).

13      A party seeking attorney's fees bears the burden of demonstrating that the rates requested

14  are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police*

15  *Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted). Generally, "the

16  relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979.

17  Typically, "[a]ffidavits of the plaintiffs attorney and other attorneys regarding prevailing fees in

18  the community, and rate determinations in other cases . . . are satisfactory evidence of the

19  prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

20  (9th Cir. 1990). In calculating the number of hours reasonably expended on the litigation, the

21  Court excludes hours that are "excessive, redundant, or otherwise unnecessary." *Tahara v.*

22  *Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461

23  U.S. 424, 434 (1983)).

24  ## III.   DISCUSSION

25      As noted above, the Court previously determined that Plaintiff has a contractual right to

26  recover reasonable costs and attorney's fees from Defendants. ECF No. 40 at 17. Plaintiff seeks

27  to recover $19,968.40 in costs and $40,534.50 in attorney's fees for work done by Plaintiff's local

28

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

counsel Terra Law LLP and specialized PACA counsel Keaton Law Firm.  In one sentence in the declaration of one of Plaintiff's attorneys, Plaintiff also requests "further interest at the contract rate of 1.5% per month (18% APR) on the judgment debt."  Keaton Decl. ¶ 12.  The Court first addresses attorney's fees, then the requested costs, and lastly, interest.

As a preliminary matter, the Court notes that Plaintiff seeks to recover the $14,471.86 in attorney's fees paid to Terra Law LLP as costs, rather than as attorney's fees.  For the attorney's fees and costs incurred by Terra Law LLP from April 2015 to January 2016, Plaintiff also adds a 15% surcharge "designed to cover the extra administrative expenses of reviewing local counsel bills for each discrete matter, negotiating any reductions therein . . . , including the local counsel bills into the client's master bill and then dividing the client's payment between the two (2) law firms."  Keaton Decl. ¶ 7.  However, Plaintiff provides no authority or explanation for considering attorney's fees as costs, which would circumvent the settled standards for determining whether requested attorney's fees are reasonable.  Additionally, in a comparable PACA case in this district, the court rejected the plaintiff's attempt to classify Terra Law LLP's fees as costs in a motion for attorney's fees by Keaton Law Firm and Terra Law LLP.  *See Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, 2014 WL 5700695, at *6 (N.D. Cal. Nov. 3, 2014) (noting that plaintiff "fails to provide any explanation as to why these attorney's fees should be considered costs" and "fails to provide the required detailed billing records in support of these fees").  The Court considers Terra Law LLP's request for attorney's fees in the below attorney's fees analysis instead of the below costs analysis.

**A. Attorney's Fees**

**1. Rates Requested**

Plaintiff seeks to recover attorney's fees for work done by the following six individuals: (1) Michael Keaton ("Keaton") from Keaton Law Firm, at $380 per hour; (2) Scott Hillison ("Hillison") from Keaton Law Firm, at $275 per hour; (3) Ryan Adams ("Adams") from Keaton Law Firm, at $235 per hour; (4) Breck Milde ("Milde") from Terra Law LLP, at $375 per hour; (5) Eric Hartnett ("Hartnett") from Terra Law LLP, at $325 per hour; and (6) Douglas Hawes

5

1    ("Hawes") from Terra Law LLP, at $120 per hour.  To support the requested rates, Plaintiff

2    submits declarations from Keaton and Hartnett.

3          The Court finds that, with one exception, the above rates are reasonable given the

4    experience and specialization of the attorney for whom they are sought.  The Court's April 4, 2016

5    order specifically directed Plaintiff to "provide supplemental briefing justifying Plaintiff's

6    requested hours and rates" and noted that Plaintiff's counsel had failed to "provide any rate

7    determinations in other cases, their curriculum vitae, or other evidence to justify counsels'

8    requested rates."  ECF No. 39 at 2 (internal quotation marks omitted).  Even after this guidance

9    from the Court, Plaintiff does not identify Hawes, explain whether Hawes is an attorney, or

10   provide any information about Hawes's education or background to justify the requested hourly

11   rate.  Without such information, the Court is unable to determine the reasonableness of Hawes's

12   rate and credits Hawes with a rate of $0 per hour.

13         However, Keaton's and Hartnett's declarations sufficiently justify the rates requested for

14   the remaining five attorneys.  Specifically, Keaton declares that Keaton Law Firm specializes in

15   pursuing claims under PACA.  Keaton Decl. ¶ 6.  Keaton has practiced for twenty-five years while

16   Hillison has practiced for eight years and Adams has practiced for two years.  *Id.* ¶ 9.  Hartnett

17   informs the Court that both Milde and Hartnett of Terra Law LLP have experience in pursuing

18   PACA trust enforcement.  Hartnett Decl. ¶¶ 8–9.  Milde has practiced for over twenty-five years

19   while Harnett has practiced for eleven years.  *Id.* ¶ 8.  In addition, Keaton and Hartnett aver that

20   the rates are reasonable for attorneys of their respective experience in this district.  *Id.* ¶ 8; Keaton

21   Decl. ¶ 10.

22         Moreover, recent decisions of other courts in this district have used comparable rates in

23   calculating fee awards in PACA actions, including in cases involving Keaton, Hillison, Hartnett,

24   and Milde.  Such "rate determinations in other cases . . . are satisfactory evidence of the prevailing

25   market rate."  *United Steelworkers*, 896 F.2d at 407.  For example, in *Greenfield Fresh, Inc. v.

26   Berti Produce-Oakland, Inc. ("Greenfield Fresh II")*, 2015 WL 1160584, at *4–5 (N.D. Cal. Mar.

27   13, 2015), the court awarded fees using similar rates to those sought here: $370 for Keaton, $275

28

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

United States District Court
Northern District of California

1  for Hillison, and a range of $325 to $375 for Hartnett and Milde. *See also Sequoia Sales, Inc. v.*

2  *P.Y. Produce, LLC*, 2011 WL 3607242, at *9 (N.D. Cal. July 29, 2011) (finding that attorney's

3  fees ranging from $285 to $350 per hour were reasonable in a PACA case); *Paramount Citrus*

4  *Coop, Inc. v. H & M Produce Inc.*, 2008 WL 4716764, at *5 (E.D. Cal. Oct. 24, 2008) (finding

5  $350 per hour was reasonable for attorney's fees in a PACA case), *adopted by* 2008 WL 5389711

6  (E.D. Cal. Dec. 24, 2008).  Although Plaintiff does not provide any case approving Adams's

7  requested rate of $235 per hour, that rate is below the range of fees awarded in PACA actions in

8  this district.  Given that Adams has practiced for two years, the Court finds that the requested $235

9  per hour rate is reasonable.

10  In light of Keaton's and Hartnett's declarations and evidence of similar rates used for fee

11  awards in comparable litigation in this district, the Court finds that Plaintiff has sufficiently

12  established reasonable rates as follows: $380 per hour for Keaton, $275 per hour for Hillison, $235

13  per hour for Adams, $375 per hour for Milde, $325 per hour for Hartnett, and $0 per hour for

14  Hawes.

15  **2.  Hours Expended**

16  Having determined the reasonable hourly rate to be applied, the Court proceeds to

17  determine the number of hours reasonably expended on the litigation.  Plaintiff contends that

18  Keaton Law Firm spent 131.4 hours on this matter while Terra Law LLP spent 43.3 hours.

19  Although Plaintiff did not provide a summation of how many total hours were expended by each

20  attorney, the Court added the requested hours for each attorney and calculated the following totals:

21  68.2 hours by Keaton, 6.1 hours by Hillison, 57.1 by Adams, 8.8 by Milde, 34.3 by Hartnett, and

22  0.20 hours by Hawes.  Because the Court declines to award any fees for Hawes as discussed

23  above, the Court need not consider whether the 0.20 hours expended by Hawes was reasonable.

24  In support of the requested hours, Keaton and Hartnett submit billing records that describe

25  the work performed and list the time expended in one-tenth of an hour increments.  Plaintiff

26  provides no briefing in addition to counsels' declarations and billing records.  An independent

27  review of counsels' billing records reveals that Plaintiff seeks numerous fees that are "excessive,

28

7

redundant, or otherwise unnecessary." *Tahara*, 511 F.3d at 955.  The Court addresses the following issues apparent from the face of counsels' records: (1) hours expended upon an unrelated adversary proceeding in bankruptcy court; (2) "estimated" time spent by Keaton; (3) duplicative or excessive fees; and (4) hours expended by unadmitted, out-of-state attorneys. Lastly, the Court considers Plaintiff's request for a 15% surcharge to be added to certain attorney's fees of Terra Law LLP.

      **a.  Hours Expended Upon an Unrelated Bankruptcy Proceeding**

The first issue of concern raised by counsels' billing records is that Plaintiff apparently seeks fees for hours expended upon an "Adversary Proceeding" in the United States Bankruptcy Court of the Northern District of California against Roberto P. Guicho, Sr.'s son, Roberto P. Guicho, Jr.  *See, e.g.*, Harnett Decl. Ex. A (time entry of July 25, 2015 stating "filing Adversary Proceeding versus Guicho Jr."); (time entry of August 19, 2015 describing filing of "Adversary Proceeding Complaint at United States Bankruptcy Court Northern District of California"). Plaintiff provides no explanation for the inclusion of these fees.

The Court concludes that any hours spent on the adversary proceeding against Roberto P. Guicho, Jr. in bankruptcy court were not reasonably expended in the instant action.  To avoid the applicability of a bankruptcy stay of the instant case, Plaintiff specifically represented to the Court that Roberto P. Guicho, Jr.'s bankruptcy "does not involve the Defendants to the action" and "does not affect Plaintiff's claims against defendant Roberto P. Guicho, Senior and the defendant corporate entity in this Court."  *See* ECF No. 15 (Plaintiff's "Notice of Non-Applicability of Notice of Stay filed by Roberto P. Guicho, Jr.").  Roberto P. Guicho, Jr. is not a defendant in this action.  Nor has Plaintiff argued that any adversary proceeding was necessary to the prosecution of this action.  Plaintiff may not recover fees against Roberto P. Guicho, Sr. and Guicho's Produce— the defendants against whom the Court granted default judgment—for work expended in a different litigation, in a different court, against a different defendant.  *See Tahara*, 511 F.3d at 955 (noting that district court may exclude hours that are "excessive, redundant, or otherwise unnecessary"); *see also Stonebrae L.P. v. Toll Bros., Inc.*, 521 F. App'x 592, 594 (9th Cir. 2013)

United States District Court
Northern District of California

8

1   ("Hours expended on an unrelated and unsuccessful claim may not be included in the lodestar

2   calculation").

3           Counsels' billing records reveal that Plaintiff's counsel worked extensively on the

4   adversary proceeding.  For example, on August 14, 2015, Milde billed 0.40 hours for "[r]eview

5   and analysis of and revise draft Adversary Proceeding Complaint."  That same day, Keaton billed

6   0.60 hours to "[r]evise and amend Adversary Complaint in Jr.'s bankruptcy to prevent discharge

7   of the PACA debt."  Similarly, Keaton billed 0.30 hours on August 20, 2015 to "[c]onference with

8   Local Counsel to confirm filing of Adversary on Jr. and status of efforts to personally serve him."

9   As another example, Harnett billed 0.20 hours on October 15, 2015 to "[r]eceive and review -

10  Order converting bankruptcy case; emails to/from M. Keaton regarding same."  On January 15,

11  2016, Adams billed 0.70 hours to "[p]repare stipulation to dismiss adversary proceedings."  None

12  of the time spent on the adversary proceeding is compensable in the instant action.  In total,

13  following review of the above entries and other similar entries, the Court excludes in full 6 hours

14  by Keaton, 20.3 hours by Adams, 6 hours by Milde, and 2.7 hours by Hartnett.

15          Moreover, the Court identifies a number of block-billed entries that refer or could refer to

16  both the instant action and the adversary proceeding.  For example, on October 30, 2015, Milde

17  billed 0.40 hours to "[c]onference with E. Hartnett re Motion to Amend Caption, status of

18  adversary proceeding, conversion to chapter 13; review and analysis of Motion to Amend Caption;

19  e-mail to M. Keaton re status, proceeding with adversary proceeding, upcoming status conference,

20  status conference statement deadline."  The motion to amend caption was filed in this Court while

21  the adversary proceeding and status conference took place in bankruptcy court.  However, Milde's

22  time entry does not provide any basis for the Court to determine how much time was spent on

23  each action.  Similarly, on September 28, 2015, Keaton billed 0.70 hours to "[c]onference with

24  Local Counsel to discuss pending adversary and next steps to lock up a judgment on the Dad (.4);

25  Conference with Co-Counsel to discuss same and timing issues (.3)."  In addition, Adams billed

26  0.20 hours for having "[r]eviewed client file and docket in preparation of a detailed update letter to

27  client" on August 13, 2015—after Adams billed for drafting the complaint in the adversary

28
9

United States District Court
Northern District of California

1    proceeding (on August 3, 4, 11, 12, 14, 2015) as well as the motion to alter caption in the instant

2    case (on August 3, 2015).  Thus, this client update letter likely was related to both the instant

3    action and the adversary proceeding against Roberto P. Guicho, Jr.

4          Similarly, there are some entries redacted such that the Court can not determine whether

5    the entries refer to the instant action, the adversary proceeding, or both.  In total, following review

6    of the above entries and other similar entries, the Court identifies the following hours that may be

7    attributed to both the instant action and the adversary proceeding: 11.6 hours by Keaton; 9.2 hours

8    by Adams; 1 hour by Milde; and 5.3 hours by Hartnett.  Courts routinely apply a blanket discount

9    to block-billed entries when the nature of the block-billing prevents the Court from effectively

10   determining whether the time spent on tasks was reasonable.  *See Welch v. Metro. Life Ins. Co.*,

11   480 F.3d 942, 948 (9th Cir. 2007) (noting that the district court has "authority to reduce hours that

12   are billed in block format").  Because the Court can not determine from these entries the

13   breakdown of work spent on the instant case compared to the adversary proceeding, the Court

14   reduces the requested hours for this work by 50% and excludes 5.8 hours by Keaton, 4.6 hours by

15   Adams, 0.50 hours by Milde, and 2.65 hours by Hartnett.

16         **b.  Estimated Time**

17         The second issue as to the reasonableness of counsels' hours relates to the Court's April 4,

18   2016 order requesting supplemental briefing, which stated that Plaintiff "offers no justification for

19   the $4,122.50 'estimate for attorneys' fees and costs through issuance of the requested default

20   judgment.'"  ECF No. 39 at 2.  In response, Plaintiff still requests fees for "estimated" time

21   expended by Keaton in March 2016.  Plaintiff's estimate assumes that Keaton expended 11 hours,

22   the average of hours expended in the past four months, for a total of $4,180.00 in fees.  *See* Keaton

23   Decl. ¶ 5, Ex. A.  No supporting documentation has been provided regarding the hours worked in

24   March 2016.

25         Plaintiff does not explain why Keaton's March 2016 time is "estimated" when Keaton

26   submitted a declaration and billing records in support of the fee request on April 8, 2016.  By

27   April 8, 2016, Plaintiff and Plaintiff's counsel would have known precisely how many hours were

28
Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

expended by Keaton in March 2016.  Moreover, the parties made no filings in March 2016, Plaintiff attended no hearings, and the Court issued no orders.  Plaintiff filed the motion for default judgment on February 24, 2016.  ECF No. 37.  The motion for default judgment was originally set for hearing on April 21, 2016, which the Court continued to April 28, 2016 on February 26, 2016.  ECF No. 38.  However, the Court ruled on the motion for default judgment and vacated the hearing on April 6, 2016.  ECF No. 40.  Accordingly, it is unclear what Keaton may have spent 11 hours working on in March 2016—there were no orders to review, no filings to draft, and no hearings set until the end of April 2016.  Plaintiff does not declare that Keaton actually worked the estimated hours in March 2016 and, as noted above, Plaintiff provides no supporting documentation for the hours expended in March 2016.

The hours claimed by an attorney "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary."  *See Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended* 808 F.2d 1373 (9th Cir. 1987).  As such, the Court excludes the 11 hours "estimated" for Keaton's work in March 2016 as not reasonably expended or adequately documented.  *See Tom Ver LLC v. Organic Alliance, Inc.*, 2015 WL 6957483, at *14 (N.D. Cal. Nov. 11, 2015) (excluding estimated time that was not supported by any documentation or a declaration that counsel actually worked the estimated hours).

c. **Excessive and Duplicative Work**

The Court finds additional hours to be excessive and duplicative.  The work required to pursue this default judgment action was minimal.  Plaintiff attended two case management conferences and no hearings.  There were five motions filed, all unopposed.  Specifically, Plaintiff filed (1) a twenty line motion for entry of default filed July 8, 2015; (2) a twenty-two line motion to amend the case caption after Plaintiff failed to properly identify one of the defendants, filed November 2, 2015; (3) a ten line motion to set aside entry of default after correction of the case caption, filed December 10, 2015; (4) a thirty-two line motion to re-enter default filed February 2, 2016; and (5) a twenty-two line motion for default judgment filed February 24, 2016.  ECF Nos.

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

10, 21, 29, 32, 37.  All the motions were one or two pages long, and not one motion cited the relevant legal standard or provided legal analysis of the issues presented.  Yet Plaintiff's five attorneys—all experienced in pursuit of PACA cases, and two with twenty-five years of litigation experience—seek to recover fees for 174.7 hours of time in a case in which no defendant made an appearance.  On this record, such a large request is unreasonable and excessive.

In addition, the Court finds that certain hours requested are duplicative.  Many of the line items for which Terra Law LLP billed are also contained in Keaton Law Firm's billing statements.  This work largely consists of email and phone conversations between attorneys.  For example, in June 2015 alone, out of the 1.10 hours billed by Terra Law LLP, Hartnett billed 0.40 hours for "E-mails to/from R. Adams" as well as an additional 0.30 hours for "E-mails to/from R. Adams regarding status of service; confirm with legal assistant regarding status; additional e-mail to R. Adams regarding private investigator" and 0.40 hours for "Attention to status of service, review e-mail from private investigator regarding service; draft and send e-mail to R. Adams regarding service and attempted call from defendant."  *See* Hartnett Decl. Ex. A.  That same month, out of 4 total hours billed by Keaton Law Firm, Adams billed 0.40 hours and Keaton 1.2 hours for conferencing with local counsel and co-counsel.  *See* Keaton Decl. Ex A.

Case law discussing when to award attorneys' fees for co-counsel conferences or other work billed by multiple attorneys suggests that it is appropriate when the party seeking the award has presented evidence that the presence and work of multiple counsel was necessary and that the conferences were "efficient and essential."  *See U.S. v. City & Cty. of San Francisco*, 748 F. Supp. 1416, 1421 (N.D. Cal. 1990) (collecting cases).  The Ninth Circuit has stated that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Here, although Plaintiff asserts that counsels' conferences were efficient and essential, Keaton Decl. ¶ 6, a review of billing records reveals that these conferences are duplicative and excessive.  As noted above, in June 2015 alone almost 100% of Hartnett's time and almost 50% of Keaton's and Adams's time was expended on conferencing with co-counsel.

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In light of the above and similar inefficiencies, the Court exercises its discretion to reduce by 10%

2    the hours requested.

3    **d.   Hours Expended by Unadmitted, Out-of-State Attorneys**

4    The final issue with regard to Plaintiff's requested fees is the propriety of awarding fees to

5    Plaintiff's out-of-state attorneys: Keaton, Hillison, and Adams.  Keaton, Hillison, and Adams are

6    not members of the bar of this Court and did not apply for *pro hac vice* admission.  By contrast,

7    Hartnett declares that Hartnett is admitted to practice before this Court, and a review of the

8    admission records for the United States District Court for the Northern District of California

9    shows that Milde is likewise admitted to practice before this Court.  *See* Hartnett Decl. ¶ 1;

10   http://www.cand.uscourts.gov/attystatus.  The Court considers whether Keaton, Hillison, and

11   Adams violated the Court's Civil Local Rules by pursuing this case as unadmitted, out-of-state

12   attorneys.

13   In order to practice in this Court, "an attorney must be a member of the bar of this Court."

14   Civ. L.R. 11-1(a).  Alternatively, "[a]n attorney who is not a member of the bar of this Court may

15   apply to appear *pro hac vice* in a particular action in this district."  *Id.* 11-3(a).  A *pro hac vice*

16   applicant must (1) submit a certificate of good standing indicating that the applicant is in good

17   standing of the bar of a United States Court or of the highest court of another state; (2) submit an

18   oath stating that the applicant agrees to abide by the Standards of Professional Conduct; (3)

19   designate a member of the bar of this Court as co-counsel; and (4) pay a fee.  *Id.* 11-3(a), (d).

20   Whether to approve a *pro hac vice* application is within the discretion of the Court.  *Id.* 11-3(c).

21   However, an attorney is disqualified from *pro hac vice* appearance if the attorney resides in or is

22   regularly engaged in the practice of law in California, or if the attorney has officially registered for

23   the California State Bar exam.  *Id.* 11-3(b).

24   When out-of-state counsel do not "properly and timely secure *pro hac vice* admission

25   before the district court" in accordance with the district court's local rules, that failure is

26   "sufficient reason to deny [an applicant's] application for attorneys' fees."  *Idaho Sporting*

27   *Congress, Inc. v. Alexander*, 23 F. App'x 713, 714 (9th Cir. 2001).  However, the Ninth Circuit

28
Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

has indicated that out-of-state attorneys who have not applied to appear *pro hac vice* may recover fees in two circumstances: (1) if the attorney at issue "would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied"; or (2) if the work of the attorney "did not rise to the level of 'appearing' before the district court." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822–23 (9th Cir. 2009).

For example, in *Winterrowd*, the Ninth Circuit held that an Oregon attorney who was not admitted to the California State Bar or admitted *pro hac vice* in the Central District of California could recover attorney's fees for work in an action prosecuted before the Central District. Although the Ninth Circuit noted that the attorney almost certainly would have been admitted *pro hac vice*, the Ninth Circuit declined to permit recovery of fees on that basis given the limited record. *Id.* at 823. However, the Ninth Circuit found that the attorney could recover fees because the attorney had not "appeared" before the district court. The Ninth Circuit noted that the attorney did not physically appear before the Central District, did not sign briefs or pleadings, had minimal contact with clients and no contact with opposing counsel, and was supervised by an attorney who was admitted to the California State Bar and who remained solely responsible to the clients. *Winterrowd*, 556 F.3d at 824–25. In such cases, the Ninth Circuit instructed, the attorney's role is properly considered as one of providing "litigation support" and is thus "distinguishable from an 'appearance.'" *Id.* at 823. The Ninth Circuit reasoned that recovery for an out-of-state consultant's services was no different than recovery for the work of paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar. *Id.* (citing *Dietrich Corp. v. King Res., Co.*, 596 F.2d 422, 426 (10th Cir. 1979); *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966)). In each of these circumstances, the fees are still recoverable on the theory that an admitted attorney has "vouched" for the work of the supporting actors and "acted as a filter" between the supporting contributors and the court. *Id.* at 824–25 (brackets omitted) (citing *Dietrich*, 596 F.2d at 426).

Similarly, the Ninth Circuit held that an unadmitted, out-of-state attorney could receive fees when the attorney never appeared in court, did not sign pleadings, was not the exclusive

14

United States District Court
Northern District of California

contact with the plaintiff or opposing counsel, and spent only 2.0 total hours on the matter, even

though the attorney had communicated with the plaintiff, "handled all settlement negotiations with

opposing counsel," supervised the work of in-state counsel, and reviewed and edited pleadings and

discovery requests. *Waite v. Clark Cty. Collection Serv., LLC*, 606 F. App'x 864, 866 (9th Cir.

2015). In *Waite*, the Ninth Circuit did not address whether the unadmitted, out-of-state attorney

could have been admitted *pro hac vice*. Instead, the Ninth Circuit explained that "[w]here, as here,

one of the plaintiff's attorneys was not admitted to practice in the forum district and did not seek

*pro hac vice* admission, the plaintiff may still recover fees for work performed by that attorney so

long as the attorney did not 'appear' in the action." *Id.* (citing *Winterrowd*, 556 F.3d at 823).

In the instant case, the Court concludes that Hillison, Adams, and Keaton improperly

"appeared" before the Court without seeking *pro hac vice* admission. In contrast to the attorneys

in *Winterrowd* and *Waite*, Hillison and Adams appeared as counsel of record on multiple Court

filings in the instant case. *Id.* Specifically, Hillison is listed along with the phrase "(*Pro Hac Vice*

Forthcoming)" on the original complaint filed April 3, 2015. ECF No. 1. According to counsels'

billing records, Hillison was the attorney who actually prepared the complaint, with revisions by

Keaton, Hartnett, and Milde. Hillison is also listed as "(*Pro Hac Vice* Forthcoming)" on

Plaintiff's Rule 7.1 Corporate Disclosure Statement filed April 3, 2015. ECF No. 3. Additionally,

Hillison is listed "(*Pro Hac Vice* Forthcoming)" on the Certificates of Service for the summons

executed on Roberto P. Guicho, Sr. and Guicho's Produce, filed July 8, 2015. ECF Nos. 7–8.

Lastly, Hillison is listed "(*Pro Hac Vice* Forthcoming)" on the motion for entry of default filed

July 8, 2015. ECF No. 10. Although Hillison appeared on five court filings—all while

representing that an application for *pro hac vice* admission was forthcoming—Hillison never filed

an application for *pro hac vice* admission.

Adams is first listed as a counsel of record "(*Pro Hac Vice* Forthcoming)" on Plaintiff's

case management statement filed July 27, 2015. ECF No. 14. Adams is also listed as a counsel of

record "(*Pro Hac Vice* Forthcoming)" on the Notice of Non-Applicability of Notice of Stay filed

July 27, 2015. ECF No. 15. On July 29, 2015, at the case management conference, Terra Law

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

1    LLP informed the Court that Terra Law LLP would be local counsel while Keaton Law Firm

2    would apply to appear *pro hac vice* as indicated on the documents filed with the Court.  No *pro*

3    *hac vice* applications were ever filed.  However, on October 30, 2015, Plaintiff filed a case

4    management statement listing Adams as a counsel of record "(*Pro Hac Vice* Forthcoming)."  ECF

5    No. 20.  Adams is similarly listed as a counsel of record "(*Pro Hac Vice* Forthcoming)" on both

6    the motion to amend the caption, ECF No. 21, and associated proposed order, ECF No. 23, filed

7    November 2, 2015.  Although Adams appeared as a counsel of record on five court filings while

8    representing that an application for *pro hac vice* was forthcoming, Adams never applied for *pro*

9    *hac vice* admission.

10           Whether to actually apply for *pro hac vice* admission was apparently considered and

11    rejected by counsel.  On October 20 and 22, 2015, Adams billed 1.1 hours to "[p]repare pro hac

12    vice Motion for Co-Counsel admittance to Court," "[c]onference with Co-Counsel to discuss pro

13    hac vice Motion," and "[a]dditional preparation for pro hac vice motion for Debtor's bankruptcy

14    case and District Court case."  On October 29, 2015, Hartnett spent 0.80 hours on a "[p]hone call

15    with R. Adams regarding Case Management Conference Statement, Pro Hac Vice Application,

16    and Motion to Amend Caption; revise Case Management Conference statement."  Again,

17    however, no *pro hac vice* application was ever filed.

18           Moreover, at the November 4, 2015 case management conference, Hartnett, appearing for

19    Plaintiff, stated: "The only reason why a *pro hac vice* application was not filed was because the –

20    it looked like this was going to proceed on a default basis and wasn't going to be litigation

21    intensive."  ECF No. 44 at 4 (transcript).  The Court and Hartnett had the following exchange:

22           **Mr. Hartnett**: I think it was the overall goal of not incurring additional fees
       on top of – we wanted to be efficient as possible in terms of obtaining reasonable
23     attorneys' fees and collecting the judgment, and since – excuse me, Your Honor –
       and because it looked like this was going to proceed on a default judgment basis,
24     the necessity of having him appear and incur those additional costs, we were
       looking to try to avoid, especially if we're not able to completely recover from
25     defendant.

26           **The Court**: Okay . . . . He's basically doing everything *pro hac vice*.  Like
       on all of his documents, he says "*pro hac vice* forthcoming."  Look at that.  That's
27     on your motion to amend caption.  That's what he says right underneath his name.

28
                                                  16

1    Look at this.  This is your July 27th, 2015, Plaintiffs' case management statement.
     Ryan Adams, Esquire, underneath his name, *pro hac vice* forthcoming.

2         **Mr. Hartnett**: I understand, Your Honor.
          . . .

3         **The Court:**  He needs to be taken off the pleadings if he's not going to be –
     I mean, look at this.  Wow, this is the complaint, April 3rd, 2015.  Scott Hillison.  I

4    guess he's at the same Keaton Law Firm as Mr. Adams in Deerfield, Illinois, *pro
     hac vice* forthcoming, April 3rd, 2015.

5
          **Mr. Hartnett**: Mr. Hillison is no longer with the – the firm, Your Honor.  I
6    know that's not the point of this discussion.  Like I said, Your Honor, it would have
     been forthcoming but for the fact that it looked like we were proceeding –
7
          **The Court**: Well, then you need to take him off the pleadings.  I'm not
8    going to allow him to make an appearance, okay?

9         **Mr. Hartnett:** Yes, Your Honor.

10        **The Court:**  You need to take him off the pleadings if he's not going to – I
     mean, that's not right.  For six months, you've been filing everything in his name
11   just saying "*pro hac vice* forthcoming," when you all have made the conscious
     decision that he's not going to apply for *pro hac vice* admission into this district.
12   Then he shouldn't be practicing in this district.  Okay?

13        **Mr. Hartnett:** Yes, Your Honor.

14   *Id.* at 10–12.  Keaton, Hillison, and Adams never applied for *pro hac vice* admission and did not

15   appear on court filings after the November 4, 2015 case management conference.

16        Although not admitted *pro hac vice*, Keaton served as "the exclusive contact in [the] case

17   with the client."  *Winterrowd*, 556 F.3d at 825.  A review of counsels' billing records indicates

18   that Milde and Hartnett, the counsel admitted to practice before this Court, sent just one e-mail to

19   Plaintiff, and that one e-mail related to Roberto P. Guicho, Jr.'s bankruptcy proceeding.  *See*

20   Hartnett Decl. Ex. A (time entry of November 2, 2015 stating "e-mail to client regarding Meeting

21   of Creditors for Chapter 13").  In the instant case, Keaton states in his declaration that he was

22   "responsible for managing the work being performed on behalf of Plaintiff and consulting with

23   Mr. Hartnett from Terra Law Firm."  Keaton Decl. ¶ 2.  In that role, Keaton "[c]onference[d] with

24   Client" and then "[c]onference[d] with Local Counsel to discuss Client's directions and service

25   issues."  *See* Keaton Decl. Ex. A (time entry of March 23, 2015).  Adams was also involved in

26   reviewing Plaintiff's file and preparing update letters to Plaintiff.  *See, e.g.*, *id.* (time entry of

27   December 18, 2015)  By contrast, Terra Law LLP's billing records list no communications with

28
          17

     Case No. 15-CV-01551-LHK
     ORDER AWARDING ATTORNEY'S FEES

United States District Court
Northern District of California

1    the client about this case and only one communication with the client about Roberto P. Guicho,

2    Jr.'s bankruptcy case.

3    Moreover, Terra Law LLP did not bill Plaintiff. Rather, Terra Law LLP billed Keaton

4    Law Firm, who reviewed the bills and then passed on Terra Law LLP's fees and costs, without

5    itemization, to Plaintiff as "Local Counsel fees." *See* Keaton Decl. ¶ 7. In response to the bills

6    from Keaton Law Firm, Plaintiff solely paid Keaton Law Firm, which then divided the payment

7    with Terra Law LLP without further interaction with Plaintiff. *Id.*

8    In light of the foregoing, it is apparent that Keaton, Hillison, and Adams were acting not as

9    "litigation support" but lead counsel with exclusive contact with the client. This conclusion is

10   supported by the total hours requested: 131.4 hours for Keaton, Hillison, and Adams compared to

11   just 43.3 hours for Milde and Hartnett. Further, even after the November 4, 2015 case

12   management conference in which the Court told Plaintiff that counsel should not practice in this

13   district without being admitted *pro hac vice*, Keaton and Adams continued to act as lead counsel

14   and the exclusive contact with Plaintiff. Keaton and Adams billed Plaintiff for 39.3 hours in

15   December 2015, January 2016, and February 2016 compared to just 10.5 total hours billed by

16   Hartnett and Milde.

17   Additionally, the record does not support a finding that Keaton, Hillison, or Adams "would

18   have certainly been permitted to appear *pro hac vice* as a matter of course had [they] applied."

19   *Winterrowd*, 556 F.3d at 822–23. None of these three attorneys (1) submitted a certificate

20   showing that he is an active member in good standing of another bar; (2) agreed to abide by the

21   Standard of Professional Conduct; or (3) paid or indicated a willingness to pay the admission fee.

22   *See* Civil L.R. 11-3(a), (d) (listing requirements for pro hac vice admission). Nor have the three

23   attorneys indicated whether they would be disqualified from *pro hac vice* admission based on

24   residing in or regularly practicing law in California. Plaintiff fails to make this showing despite

25   the fact that Plaintiff bears the burden of demonstrating the reasonableness of Plaintiff's attorney's

26   fees request. Further, the Court's April 4, 2016 order stated that Plaintiff's motion for attorney's

27   fees and costs was inadequate and ordered supplemental briefing. ECF No. 39.

28

United States District Court
Northern District of California

18

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

"An out of state attorney must still apply for *pro hac vice* admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel." *Winterrowd*, 556 F.3d at 825.  As discussed, Keaton was the exclusive contact with the client and both Hillison and Adams were listed as a counsel of record on multiple Court filings, including substantive motions, representing that *pro hac vice* admission applications were forthcoming.  Further, at the July 29, 2015 case management conference, Plaintiff represented that Keaton Law Firm would move for *pro hac vice* admission.  No *pro hac vice* application was filed, and Plaintiff revealed at the November 4, 2015 case management conference that—even though Adams is listed as "(*Pro Hac Vice* Forthcoming)" on the case management statement filed in advance of that conference—the attorneys had decided not to apply for *pro hac vice* admission.  Given the active involvement of these attorneys in the case, the Court finds that Keaton, Hillison, and Adams improperly "appeared" in the case without being admitted before the Court in conscious disregard of the Court's Civil Local Rules.

The issue then becomes whether Defendants must be required to compensate unadmitted, out-of-state attorneys who have represented clients in this Court as if they were licensed to practice law in this Court.  Courts have found that an out-of-state attorney's failure to secure *pro hac vice* admission a sufficient reason to deny fees entirely for the contributions of that attorney.  *See Idaho Sporting Congress, Inc.*, 23 F. App'x at 714 ("Failure . . . to properly and timely secure *pro hac vice* admission before the district court was a sufficient reason to deny [plaintiffs'] application for attorney's fees."); *Spanos*, 364 F.2d at 167 (reversing award of attorney's fees for non-admitted attorney who failed to obtain *pro hac vice* admission).  However, other courts have found that a 50% reduction in hours is an appropriate sanction.  *See Natures Way Marine, LLC v. Everclear of Ohio, Ltd.*, 2015 WL 1757116, at *5 (S.D. Ala. Apr. 17, 2015); *cf. Moofly Prods., LLC v. Favila*, 2015 WL 6681164, at *4 (C.D. Cal. Nov. 2, 2015) (noting that if unadmitted lawyers undertake the work of admitted lawyers, the court may reduce or eliminate the unadmitted lawyers' requested time).

In the instant case, the Court informed counsel that they should not be practicing before the

19

United States District Court
Northern District of California

1    Court absent *pro hac vice* admission.  At the November 4, 2015 case management conference, the

2    Court stated: "For six months, you've been filing everything in his name just saying 'pro hac vice

3    forthcoming,' when you all have made the conscious decision that he's not going to apply for *pro*

4    *hac vice* admission into this district.  Then he shouldn't be practicing in this district."  ECF No.

5    44.  Although Adams did not appear on further filings before the Court, Adams and Keaton

6    continued to act as lead counsel and the exclusive contact with the client.  As noted, Keaton and

7    Adams billed 39.3 hours in December 2015, January 2016, and February 2016 compared to

8    Hartnett's and Milde's 10.5 hours.  In light of the foregoing, it is apparent that counsel willfully

9    violated this Court's Civil Local Rules even after being informed that practicing in this district

10   without *pro hac vice* admission was inappropriate.

11            Additionally, in advance of determining attorney's fees and costs the Court ordered

12   Plaintiff to submit supplemental briefing justifying the requested attorney's fees.  Plaintiff's

13   supplemental filing does not attempt to justify the recovery of fees by Plaintiff's unadmitted, out-

14   of-state attorneys.  However, there is no indication that Keaton, Hillison, or Adams have

15   previously failed to comply with the Court's Civil Local Rules in other cases in this district.  *See,*

16   *e.g.*, *Greenfield Fresh II*, 2015 WL 1160584, at *4 (awarding attorney's fees to Keaton and

17   Hillison in PACA default judgment action).  Accordingly, the Court concludes that a reduction in

18   the requested hours rather than an elimination is appropriate and reduces the reasonable hours

19   expended by Keaton, Hillison, and Adams by 50%.  The Court admonishes counsel that a similar

20   failure to comply with the Civil Local Rules in another appearance before this Court will result in

21   the elimination of requested fees and a possible referral to the State Bar.

22            **e.  15% Surcharge on Terra Law LLP's Attorney's Fees**

23            Plaintiff requests a 15% surcharge for the attorney's fees and costs incurred by Terra Law

24   LLP from April 2015 to January 2016 "to cover the extra administrative expenses of reviewing

25   local counsel bills for each discrete matter, negotiating any reductions therein . . . , including the

26   local counsel bills into the client's master bill and then dividing the client's payment between the

27   two (2) law firms."  Keaton Decl. ¶ 7.  However, Plaintiff may not recover attorney's fees for

28

United States District Court
Northern District of California

20

purely clerical tasks.  *See Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) (holding that an attorney may not seek reimbursement for purely clerical tasks at an attorney rate); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that clerical tasks such as filing and organization "should have been subsumed in firm overhead rather than billed at paralegal rates"). Plaintiff makes no argument that counsels' time reviewing local counsel bills, preparing billing statements, and dividing client payment involved anything other than non-legal clerical tasks.  In addition, at least two other courts have rejected Keaton Law Firm's attempt to recover this surcharge on local counsel fees.  *See Greenfield Fresh II*, 2015 WL 1160584, at *5 (declining to award 15% surcharge on local counsel fees in comparable PACA action with Terra Law LLP and Keaton Law Firm); *In re JK Farms, Inc.*, 458 B.R. 636, 640 (Bankr. D.D.C. 2011) (finding 15% surcharge on local counsel fees requested by Keaton Law Firm to be unreasonable).  The Court agrees that the 15% surcharge requested for counsel's clerical work is unreasonable.

### 3.  Lodestar

In light of the foregoing, the Court's lodestar calculation is as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Keaton | $380 | 20.43 | $7,763.40 |
| Hillison | $275 | 2.745 | $754.88 |
| Adams | $235 | 14.49 | $3,405.15 |
| Milde | $375 | 2.07 | $776.25 |
| Hartnett | $325 | 26.055 | $8,467.88 |
| Hawes | $0 | 0.20 | $0 |

The total lodestar is therefore $21,167.56.

### B.  Costs

Plaintiff seeks $19,968.40 in costs, comprising of (1) $1,412.50 in process server fees for service on Roberto P. Guicho, Sr.; (2) $2.00 for in-house copying charges incurred by Terra Law LLP; (3) $350 in filing fees for a complaint filed in the United States Bankruptcy Court; and (4) $558.74 incurred by Keaton Law Firm for online research, copy expenses, mailing expenses, and

21

United States District Court
Northern District of California

"LD" (presumably, long-distance) telephone expenses. Plaintiff also seeks to recover the attorney's fees paid to Terra Law LLP as costs. However, as discussed above, the Court considers Terra Law LLP's attorney's fees as attorney's fees rather than costs.

As to the requested process server fees, counsels' records show that service was attempted on Roberto P. Guicho, Sr. fourteen times on eleven different days. *See* Hartnett Decl. Ex. A. Thus, the Court concludes that the $1,412.50 process server fees were reasonably incurred. Additionally, the $2.00 in copying fees incurred by Terra Law LLP appears to have been reasonably incurred.

However, the Court deems it appropriate to reduce the amount of the remaining requested costs. First, the Court excludes the $350 cost of filing a complaint in United States Bankruptcy Court on August 19, 2015. Although Plaintiff does not provide a copy of this complaint, a review of counsels' billing records shows that the complaint was filed to initiate an adversary proceeding against Roberto P. Guicho, Jr.—an individual who is not a defendant in the instant action. To avoid the applicability of a bankruptcy stay in the instant action, Plaintiff specifically represented to the Court that Roberto P. Guicho, Jr.'s bankruptcy "does not involve the Defendants to the action" and "does not affect the Plaintiff's claims against defendant Roberto P. Guicho, Senior and the defendant corporate entity in this Court." *See* ECF No. 15 (Plaintiff's "Notice of Non-Applicability of Notice of Stay filed by Roberto P. Guicho, Jr."). There is no indication that any claims in the adversary proceeding arise out of the same transactions at issue in the instant case, and the dischargeability of Roberto P. Guicho, Jr.'s debt is irrelevant to the judgment entered against Roberto P. Guicho, Sr. and Guicho's Produce. The prosecution of a different action, against a different defendant, in bankruptcy court was not necessary to the litigation of the instant case. The Court declines to award costs related to the adversary proceeding.

Second, the $558.74 in research, mailing, and telephone costs incurred by the Keaton Law Firm were incurred both before ($80.76) and after ($477.98) the involvement of Plaintiff's counsel in the adversary proceeding against Roberto P. Guicho, Jr. During the months after the adversary proceeding was filed, Keaton and Adams billed significant time to work on the adversary

Case No. 15-CV-01551-LHK
ORDER AWARDING ATTORNEY'S FEES

1   proceeding.  Accordingly, the Court reduces by 50%, to $238.99, the costs incurred after

2   Plaintiff's counsel began to bill for work on the adversary proceeding as the Court can not

3   determine whether the costs were incurred in prosecution of the instant action or the unrelated

4   adversary proceeding.  In sum, the Court finds $319.75 in expenses were reasonably incurred by

5   Keaton Law Firm.

6          In sum, the Court awards Plaintiff $1,412.50 in process server fees and $321.75 in costs

7   related to copying, long-distance phone calls, online research, and mailing, for a total of $1,734.25

8   in costs.

9       **C.  Interest**

10         In addition to attorney's fees and costs, Plaintiff asks the Court to award "further interest at

11  the contract rate of 1.5% per month (18% APR) on the judgment debt."  Keaton Decl. ¶ 12.  In the

12  Court's April 6, 2016 order granting default judgment to Plaintiff, the Court specifically noted that

13  Plaintiff requested "prejudgment interest" and was entitled to that interest based on Plaintiff's

14  contracts with Defendants.  ECF No. 40 at 18.  The Court awarded Plaintiff $5,123.38 in

15  prejudgment interest.  *Id.*  Given that the Court has already awarded all of the interest that had

16  accrued as of the date of judgment, Plaintiff is not entitled to any additional prejudgment interest.

17  Further, the Plaintiff provides no argument or authority to show that Plaintiff is entitled to

18  postjudgment interest.  Accordingly, the Court declines to award any additional interest on the

19  value of the unpaid produce.

20  **IV.    CONCLUSION**

21         For the foregoing reasons, the Court awards Plaintiff $21,167.56 in attorney's fees and

22  $1,734.25 in costs.

23  **IT IS SO ORDERED.**

24

25  Dated: April 29, 2016

26                                      _Lucy H. Koh_
                                        _____
27                                      LUCY H. KOH
                                        United States District Judge
28

United States District Court
Northern District of California